On the docket is 5-812-12-8-0265, People's State of Illinois v. Taylor. May I please have the report? Yes. My name is Mandy Heim and I represent the defendant Mr. Donald Taylor in this matter. In the brief, there are four separate issues argued. Issue one is the trial court's failure to use a mandatory jury instruction. Because the parties agreed that this was a clear and obvious error, I'll be focusing on why this error alone should warrant a new trial. Now, Mr. Taylor was charged with one count of predatory criminal sexual assault with his son, S.P. This allegedly occurred sometime between 2008 and 2011, and he was eventually found guilty by a jury. Mr. Taylor was ultimately sentenced to mandatory natural life in prison with no possibility of parole. Now, the problem here is that the trial court failed to give a mandatory jury instruction on the hearsay of the minor complainant. This error was prejudicial as a hearsay statement was the centerpiece of the state's case against Mr. Taylor. In particular, this was the forensic interview where S.P. first disclosed that any alleged abuse had occurred. Now, in common law, this type of hearsay evidence wouldn't have made it into a criminal trial, not in this way. But there's now a statutory exception in Illinois which allows the hearsay of minors in trials for alleged sex offenses. But any time hearsay comes in under the statute, it must be accompanied by an instruction which will caution the jury to determine the weight and the credibility of the hearsay while considering the circumstances of the statement, the nature of the statement, the age and maturity of the child, and anything else relevant. Here, no instruction was given. Now, defense counsel didn't offer this instruction, so it's not preserved. But it's nonetheless reversible under the first prong of plain error or as ineffective assistance of counsel. Now, under prong one of plain error, error is reversible if the evidence was so closely balanced that the error threatened to tip the scales of justice against the defendant. Ineffective assistance is reversible. If absent the error, there's a reasonable probability that the outcome would have been different. This has also been stated as undermining confidence in the outcome of trial. Now, as the state agrees that the error occurred, it was clear and obvious our only dispute is to the closeness of the evidence on this issue. Now, conviction here was dependent on the jury determining whether it trusted the accuracy of ST's statements or if it trusted Mr. Taylor's outright denials. ST offered the only direct evidence of the alleged abuse. And the first time he offered this evidence was in response to a forensic interviewer. The second time was at trial where he gave more limited and confused testimony and wasn't able to testify as clearly as when he had a forensic interviewer gently guiding him. The only other evidence offered by the state was the 1989 conviction, which came in under a statutory exception and was used as propensity evidence. Now, Mr. Taylor, for his part, had steadfastly denied these accusations. He did this before trial when cooperating with police, and he did it at trial when he took the stand in his own defense. The state can point to no spontaneous outcry from ST. There are no corroborating witnesses, despite the fact they lived in a house with the mother and the grandparents. There's no physical evidence, and there are no omissions from Mr. Taylor. When conviction hinges on the resolution of a credibility contest, the evidence is closely balanced. But in this case, it's even more closely balanced because the error at issue was intertwined with the very credibility contest that was before the jury. The forensic interview was ST's only detailed description of the abuse. It was central to the state's case against Mr. Taylor, and it was referred to at length in closing arguments. It was this very same interview which would have been the subject of that jury instruction. In short, this trial lacked a mandatory instruction about evaluating the credibility of a minor's hearsay statement in a case turning on the credibility of that same minor's statements. Thus, the failure to give this mandatory instruction threatened to tip the scales against Mr. Taylor, such that his conviction should be reversed for a new trial. No one likes to think about the possibility of someone sexually assaulting a young child, let alone their son. Simply hearing a charge like this read puts people on edge. But it's for just that reason that before we put someone away for mandatory life, we make sure the jury is properly instructed to critically evaluate the evidence. Here, there was not that much direct evidence of the alleged abuse. It was the child's forensic interview and his trial testimony. When those are the facts, you need to have the jury properly instructed on how to weigh the credibility of that forensic interview. And where that didn't happen, this court should not have confidence in this conviction. As a result, we would respectfully ask that this court remand so that Mr. Taylor can receive a trial before a properly instructed jury. Are there any questions? No questions, thank you. Good afternoon, Your Honors. May it please the court? Counsel? We are in absolute agreement that there was clear error here. This is a required instruction. The Supreme Court has determined it's a required instruction for people to start. I want to start this plain error argument a little bit differently. I preface that by saying that the state's closely balanced, not closely balanced argument is sort of a three-pronged platform. It would be the victim's testimony in court, the victim's statements that were given to the forensic examiner, and the propensity evidence. Obviously, the strength of that argument would be undermined if one of those problems isn't going to work. So I want to start, although it wasn't addressed by counsel, I'm opening a little bit with the propensity evidence issue. In this case, the state had sought to introduce as propensity evidence some particulars of a LaSalle County conviction. It was an older conviction, over 10 years old at least, probably one of the weaker aspects of it. It involved several victims, three females and one male. It involved children from the ages of between, I think, 8 and 13. It involved sexual contact of mouth to sex organ involving all of them. These were children of the defendant's parent, I believe, at the time. They were not his biological children. The court had heard evidence. It was a little bit unusual about this case, but I have to acknowledge that one aspect of this is that when the state presented its request to admit this as propensity evidence, it did not present testimony. In fact, the prosecutor said, well, I can present testimony if you want, but you probably wouldn't want to hear that, you know, Mr. Defense Counsel. So there wasn't really any contestation of that aspect of it by Defense Counsel, whose argument principally relied upon sort of a broad-based prejudice argument and the antiquity of the charges. Donna Hohel did that. Of course, age is just one but one factor in regards to the probative value of the evidence. And, of course, the older it is, it's sort of a diminishing return for probative value, but nonetheless, it's not the controlling issue. What the court has held is that what you need is asked to be some threshold level similarity. General similarities will typically suffice. And in this case, I would submit that the court's ruling in admission of the propensity evidence was correct in as much as that it involved children of a similar age to the victim. It involved sexual acts that were similar. It involved children that were in the defendant's responsibility and care and that type of milieu. And I think that those factors alone would be enough under the broad standard articulated in Donna Hohel to justify the court's admission of that propensity evidence. Which now gets us back to the first issue, and that is whether the state's evidence was overwhelming. You know, any time you get these overwhelming evidence cases, is it or isn't it, it's a tough call sometimes because obviously there are categories of overwhelming evidence that are really easy to get or you've got your admission. And so there are going to be instances that it's an easy argument to make, but I don't think it has an exclusive set of circumstances that allows a court to find a set of facts to be particularly overwhelming. In this case, we would submit that the three-pronged platform, as I mentioned at the beginning, is what made the evidence overwhelming. The propensity evidence, the victim's testimony, and the forensic examination. Counsel makes a very good point in which I agree with. I thought the forensic was negative in this case. Forensic interviewer, I'm sorry. I did the recording. I apologize. Yeah, there was no physical evidence, correct, or confession. There is a certain kind of counterintuitiveness, I suppose, where the issue relates to an instruction that is concerning the admission of a recorded interview with a victim. But that in itself can be used in error or an error in that regard, that that interview itself can be used to counter the argument or to support the argument of overwhelming evidence. State cites a case called People v. Marcos. Marcos was really the first decision to come out and say, well, yes, you can do that. Marcos, I believe, was 2013, so it's a case of pretty recent vintage. And what Marcos essentially did in a nutshell is it looked at Sargent. Sargent was itself a plain error issue with regards to the absence of an instruction. This instruction is an issue of IPI 11.66, which is also in the statute itself, this instruction, which has to be given. The Marcos court had actually focused upon the structural error aspect of the plain error argument, not the closely balanced part of it, and had come to the conclusion that IPI 1.02, which is sort of the general credibility instruction, although not the same on all squares and all floors with 11.66 covered enough of the same territory, that it, when combined with the evidence as presented by the state of the interviews of the victims, established the overwhelming evidence aspect of it. So there was no plain error. Well, I don't understand what you're trying to convey to us. Okay. In Marcos, did they have a forensic interview? They did. And did the defendant confess? He did make an inculpatory statement, right. Right. The big difference between this case and the Sargent case and Marcos, I guess, is this guy categorically denied any involvement from the very beginning. What you make, you make a very good point. Now, listen, I think it's probably important, and maybe I'm not making it particularly clear. There's really kind of two steps involved here. The first question that Marcos took up was whether you could use the recorded interview, the forensic interviews I referred to, as one part of a plain error argument. Marcos court ultimately concluded that, yes, that you can. It then took that and then combined it with everything else to say and to hold that the evidence was, in fact, overwhelming. Now, at that point, Your Honor's point is correct. That's where the distinction lies between Marcos and this case is the defendant did not confess. I think that's why I tried to emphasize at the beginning of the argument that there are certain degrees, I suppose, you're going to be looking at certain levels of facts to make a conclusion about whether a case concerns overwhelming evidence or not. I mean, here you have a child who makes a statement. Then he makes it again, but there's a lot of confusion within the statements themselves, right? I don't believe that that's the case at all. You don't believe that he says one thing to the interviewer and said something else? I think that there are going to be some discrepancies as often happens. But I do think that when we talk about using the forensic interview as part of the evidence to establish overwhelming evidence, I think that you have to look at the interview itself because it does come in as substantive evidence. Okay? And so you're going to make credibility assessments based upon not just how the minor testifies in court, or even necessarily you're going to make credibility assessments versus what the minor testifies to versus what the minor says to a forensic interviewer. Because clearly there's a big difference between a child who's in a room with toys and a woman speaking to him very nicely and sitting in a courtroom with a judge and jury and a bunch of people scowling instead of a little boy testifying. So I guess the point I'm making is that it's one part of the overwhelming evidence, but if it establishes a certain type of credibility that is very strong, then I think that that becomes obviously a particularly powerful component of overwhelming evidence argument. And that's, I think, the point is here is that I'm not going to belabor the video point by point because this court has evidence to review it, and it will review it. It is a very interesting interview. This is a boy who is clearly very guarded in the interview at the early stages about speaking. The reason for that sort of manifests itself as the interview goes on. He asks on several occasions whether anyone else is going to know what he's saying. He eventually says that, you know, his dad had told him not to say anything to anybody or he would be in trouble if he talked about it. He gave physical descriptions of what happened and also anatomically correct diagrams. So I ask this court to consider all of that. Thank you. Thank you. Over to the second. So this is in the reply brief, but I just want to point out that the facts given for the priors, one of the victims from the guilty plea of the four different children was not related, was at a Christmas party, 13 years old. There were a lot of differences. I don't think it comes even close to hitting the threshold similarities to be used against them in a subsequent trial as propensity evidence. And I think a larger point is that the reason propensity evidence is viewed with such suspicion when it comes into criminal trials is because it encourages jurors to too easily commit. The fear is that they're not even going to care what happened in 2008 or 2011 because why do we have someone that committed this offense in the past walking around at all? So the fear is they're not even going to consider the evidence of what happened today, what happened in this criminal trial. So while the probative evidence is there to say that it pushes it out of the credibility determination into overwhelming evidence, I think that proves way too much. You know, why even have a trial if we have these certified convictions and the name of the charge? At the end of the day, the probative evidence doesn't help the jury decide what happened with ST. It doesn't offer physical evidence. It doesn't offer corroboration. So yes, it's evidence, but I think it makes it all the more important that we make sure the jury is very seriously considering what is the evidence of what happened with ST. How do they weigh the credibility of the evidence that's coming before them? Now, in Marcos, in Mitchell, and in Sargent, which are the three big cases where this jury instruction didn't go forward, in every single one of those, there was a confession. In Sargent and in Marcos, they said it's not closely balanced. There was a confession. There was an extensive forensic interview, I think, in both of them, and extensive other outcry, I think, to other witnesses. And you can compare for reliability in the details. Here, we don't have these kinds of details in the trial testimony to do some comparison. There's nothing that we can compare here. It's very limited. And then if we look at Mitchell, they looked at that, and they said, yes, the jury instruction wasn't given, and yes, there was a confession, but this is still closely balanced. This testimony isn't enough. There are too many questions. We need to send this back for a new trial. And I think in this case, that's all the more true because we have an outright denial. We don't know what happened right now, and we need, before we put someone away for their entire life, to be sure that the jury was really thinking about, okay, at this time, the little boy is going into a room with an interviewer. What are the circumstances of that? What are the relevant things to think about here? But it wasn't drawn out at all for this jury. I also think that it's important that some of the prosecutor misconduct issues went straight towards credibility bolstering. So if this court finds that any of those were prosecutor misconduct, I think that makes it all the more important that a jury instruction relevant to credibility goes to the jury. There are no questions. I'm sorry. Did the Mitchell case order a new trial? I believe so. It was a reversal. Thank you, counsel. The case will be taken under advisement. It will be revised. The court will stand in recess. I believe we have other cases. The court will stand in recess until, I guess, tomorrow.